380 So.2d 1379 (1980)
Sylvia C. BORDELON, Plaintiff-Appellee,
v.
SAFEWAY INSURANCE COMPANY, and Kenneth P. Jouglard, Defendants-Appellants.
No. 7415.
Court of Appeal of Louisiana, Third Circuit.
February 6, 1980.
Rehearing Denied April 2, 1980.
*1380 Dean, Lomenick & Seemann, G. Frederick Seemann, Lafayette, for defendants-appellants.
Donald R. Wilson and John R. Contois, Marksville, for plaintiff-appellee.
Before FORET, CUTRER and DOUCET, JJ.
DOUCET, Judge.
Sylvia C. Bordelon brought this suit for damages individually and in behalf of her minor daughter, Dewanda Lachney. Defendants, Kenneth P. Jouglard and Safeway Insurance Company, appeal a judgment of the district court rendered against them in solido and in favor of plaintiff, awarding a total of $16,182.25 in damages.
The facts are that plaintiff's daughter, Dewanda Lachney, was injured on April 1, 1978 when she fell from a moving automobile, which was owned and being driven by Kenneth P. Jouglard. Dewanda, who was thirteen years old at the time, fell from Jouglard's car onto a hard-surfaced road in Avoyelles Parish, Louisiana. As a result, she lost three front teeth and sustained lacerations and contusions of her gums, lips, face, knees and abdomen. In addition, she suffered damage to her upper jaw.
The witnesses at the trial presented two substantially different versions of the circumstances surrounding the accident. It was undisputed that Jouglard, who was eighteen years old at the time, had taken Dewanda, her sisters, Christine Lachney and Brenda Lachney, and a friend, Pamela Ducote, to a swimming hole near their home. The ages of these girls ranged from twelve to fifteen. After swimming for some time, the group decided to go and pick up some friends who lived nearby.
According to the girls, they all got into Jouglard's car. Jouglard, Christine Lachney and Dewanda were seated in the front with Dewanda on the far right against the passenger door. Jouglard was driving approximately 30 to 40 miles per hour down a winding, asphalt road. As they rounded a curve to the right, the door suddenly opened and Dewanda fell out of the car.
Plaintiff contends that the door opened because it contained a defect, which made it *1381 difficult to close. At the trial, a stipulation was entered into whereby the parties agreed that an expert affiliated with General Motors Corporation had examined the door and found that although the door latch and locking mechanism were in good working order, the hinges were sprung. The girls also testified that there was a wire connected to a stereo cassette or radio, which ran through the hinges, making the door more difficult to close. Jouglard, on the other hand, testified that the wire was not there at that time and that the door closed easily.
After the accident, Jouglard and Brenda Lachney took Dewanda to a local hospital, where Brenda informed the hospital staff that the accident had happened as described above. Jouglard, who was present at the time, did not protest or challenge her story. On April 18, 1978, Jouglard gave a statement to a representative of Safeway Insurance Company, which was consistent with the testimony of the girls. However, on May 26, 1978, Jouglard gave a second statement to the representative of the insurance company in which he related a different version of how the accident took place. His testimony at the trial agreed with the second statement.
Jouglard testified that Dewanda, Brenda and Pamela were riding on the hood of his car when Dewanda fell. He claimed that he was driving 10 to 15 miles per hour and that he had rounded the curve and was going straight when she fell. His testimony was corroborated by Mrs. Beryl Guillot, who testified that she lives near the area where the accident took place and that she saw the girls riding on the hood of the car. She also testified that she saw Dewanda fall from it.
After taking the matter under advisement and evaluating the credibility of the various witnesses, the trial judge found that Dewanda was riding inside the car when she fell and that the fall resulted from a defect in the door, which caused it to unexpectedly open. He further found that Jouglard was negligent in (1) failing to warn his minor passengers of the defective door, (2) failing to supervise the closing of the defective door, (3) allowing three passengers to crowd into the front seat when he knew that the passenger door was defective, and (4) operating his vehicle at speeds that caused his guest passenger to fall against a door that he knew to be defective. Defendants' arguments that Dewanda was contributorily negligent and/or had assumed the risk was rejected.
Judgment was rendered against Jouglard and his insurer, Safeway Insurance Company, in solido and in favor of plaintiff in her individual capacity in the sum of $1,182.25 for past medical expenses. Judgment was also rendered against both defendants in solido and in favor of plaintiff in her capacity as administrator of Dewanda Lachney's estate in the sum of $15,000.00 for the pain and suffering and mental anguish associated with the child's injury and permanent disfigurement.
The issues raised by defendants on appeal are whether the trial court erred in (1) failing to dismiss plaintiff's suit due to her lack of procedural capacity to sue, (2) finding that Jouglard was negligent and that plaintiff was not barred from recovering because of Dewanda Lachney's contributory negligence and/or assumption of the risk, (3) awarding plaintiff $1,182.25 for medical expenses, and (4) finding that Safeway Insurance Company is solidarily liable with Jouglard.

1.
Plaintiff testified at the trial that Dewanda's father is deceased and that she had not qualified as the child's natural tutrix in accordance with LSA-C.C.P. Art. 4061. Defendants contend that she is, therefore, not the proper plaintiff to sue to enforce the rights of this unemancipated minor under LSA-C.C.P. Art. 683. We agree, however, we also note that an objection to a party's lack of procedural capacity must be raised through the dilatory exception prior to answer or judgment by default. LSA-C.C.P. Arts. 926, 928. The record reflects that although defendants filed the appropriate exception, it was filed at the same time as their answer to plaintiff's *1382 petition. Because the exception was not filed prior to the answer, the objection urged by it was waived. Nicosia v. Guillory, 322 So.2d 129 (La.1975). Accordingly, we find no error in the trial court's refusal to dismiss plaintiff's suit.

2.
As we noted earlier, the trial court's conclusion that Jouglard was negligent was based on its findings that the door was defective and that Dewanda was inside the car when she fell. Defendants contest those findings, arguing that they are not supported by a preponderance of the evidence. We disagree. The objective evidence relevant to this issue was minimal, and the testimony was conflicting. It is clear from the trial judge's written reasons for judgment that he did not believe the testimony of Jouglard or Mrs. Guillot. Given that evaluation of the credibility of the witnesses, which we do not find to be unreasonable, the evidence adequately supports the trial court's findings.
The same is true of the trial court's conclusion that Dewanda was not contributorily negligent and had not assumed the risk. We cannot say that these findings are clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). They will, therefore, not be disturbed.

3.
Defendants contend that the trial court erred in awarding plaintiff the sum of $1,182.25 for past medical expenses incurred in the treatment of Dewanda's injuries. They do not dispute that plaintiff proved expenses in the amount of $439.25, however, they argue that there was no proof as to the remainder of the amount awarded. The record reveals that plaintiff attempted to establish the expenses reflected in the disputed portion of the award through the testimony of her attorney. That testimony was objected to by defendants and was heard as an offer of proof.
Counsel for plaintiff testified that he recommended that Dewanda go to Dr. Bruce Phillips, an oral surgeon, because of her injuries to her teeth and mouth. He then contacted Dr. Phillips and informed him that he was an attorney representing her and asked that the bills be sent to him. He identified a bill of $450.00, which he received from Dr. Phillips. It was filed in the record as PR-8. Counsel also testified that he contacted Dr. Francis Laborde about getting false teeth to replace Dewanda's missing front teeth, since she had been without them for several months. Dr. Laborde's bill of $350.00 was also sent to him. It was identified by him and filed in the record as PR-9.
It is clear from the record that defendants' objection was based on the fact that the testimony came from an attorney participating in the litigation. Defendants' attorney informed the trial court that there was a prior case in which the Louisiana Supreme Court had held that such testimony is impermissible. He was unable to furnish a citation at that time, however, and the offer of proof was made in lieu of a ruling on the objection at that point.
The citation to that case does not appear in counsel's post-trial memorandum or in the brief that he submitted to this court. However, in making his objection, he supplied the name of the attorney involved, and based on the court reporter's phonetical spelling of it, we think that he may have been referring to the case of Gutierrez v. Travelers Insurance Company, 358 So.2d 349 (La.App. 4th Cir. 1978). That case involved a workmen's compensation claim for death benefits. The claimant's attorney, who was his step-son and the deceased's child, was the material witness for the claimant. Holding that the attorney's representation of the plaintiff while testifying as his material witness was a clear violation of the Code of Professional Responsibility[1], *1383 the court remanded the matter for a new trial, advising the plaintiff to secure another attorney from a different firm, so that his step-son could properly testify in his behalf.
The extreme circumstances giving rise to the court's decision in that case are clearly not present in the instant one. The fact that Dewanda was treated by these physicians was established by the testimony of other witnesses. Furthermore, defendants have not questioned the accuracy of these bills, and they do not appear to be clearly excessive.
Due to the serious ethical considerations involved, we cannot approve the methods employed by plaintiff's attorney. We believe that some means of avoiding the conflict should have been found, although his actions appear to have been well-intended. It is evident from his testimony that he contacted the physicians in order to secure the prompt treatment of Dewanda's injuries *1384 and the curtailment of the mental anguish produced by the absence of her front teeth. In view of the fact that plaintiff has limited means and was allowed to bring this suit in forma pauperis, she may well have had difficulty securing these much needed services for Dewanda had it not been for her attorney's intervention.
Under these circumstances, we do not believe that the trial court erred by considering this evidence in rendering judgment, despite the fact that some other form of proof would have been preferable. Although attorneys are bound to observe the rules contained in the Code of Professional Responsibility, we know of no evidentiary rule excluding the testimony of attorneys in this kind of situation. Moreover, the facts simply do not establish that the evidence was so untrustworthy or questionable as to warrant its exclusion to plaintiff's detriment.

4.
Safeway Insurance Company argues that the trial court erred in rendering judgment against it because of the lack of any evidence of the existence of insurance coverage. In her petition, plaintiff alleged that Jouglard was insured by Safeway against his liability to her for the negligent operation of his automobile. Defendants responded with a general denial, and further stated that the contract of insurance entered into by Safeway and Jouglard is the best evidence of the contractual obligations that exist between them. The insurance policy was never introduced into evidence, and we find no other evidence in the record to establish liability on the part of Safeway. Plaintiff had the burden of proving the insurance coverage on which her claim against Safeway is based. Turner v. Ewing, 255 La. 659, 232 So.2d 468 (1970). Since she failed to do so, the trial court should not have held Safeway liable. Richardson v. Department of Highways, 345 So.2d 985 (La.App. 2nd Cir. 1977); Stewart v. Liberty Mutual Insurance Company, 315 So.2d 337 (La.App. 1st Cir. 1975).
For these reasons, the judgment is affirmed insofar as it renders judgment in favor of plaintiff and against defendant, Kenneth P. Jouglard. It is reversed insofar as it renders judgment against defendant, Safeway Insurance Company, and it is ordered, adjudged and decreed that plaintiff's demands against defendant, Safeway Insurance Company, are dismissed.
All costs of this appeal are assessed to the defendants.
AFFIRMED IN PART; REVERSED IN PART, AND RENDERED.
NOTES
[1] Louisiana Code of Professional Responsibility, Articles of Incorporation, Louisiana State Bar Ass'n, art. XVI, LSA-R.S. 37, ch. 4, app. The Ethical Considerations and Disciplinary Rules cited by the Court were as follows:

"EC 5-9. Occasionally a lawyer is called upon to decide in a particular case whether he will be a witness or an advocate. If a lawyer is both counsel and witness, he becomes more easily impeachable for interest and thus may be a less effective witness. Conversely, the opposing counsel may be handicapped in challenging the credibility of the lawyer when the lawyer also appears as an advocate in the case. An advocate who becomes a witness is in the unseemly and ineffective position of arguing his own credibility. The roles of an advocate and of a witness are inconsistent; the function of an advocate is to advance or argue the cause of another, while that of a witness is to state facts objectively."
"EC 5-10. Problems incident to the lawyer-witness relationship arise at different stages; they relate either to whether a lawyer should accept employment or should withdraw from employment. Regardless of when the problem arises, his decision is to be governed by the same basic considerations. It is not objectionable for a lawyer who is a potential witness to be an advocate if it is unlikely that he will be called as a witness because his testimony would be merely cumulative or if his testimony will relate only to an uncontested issue. In the exceptional situation where it will be manifestly unfair to the client for the lawyer to refuse employment or to withdraw when he will likely be a witness on a contested issue, he may serve as advocate even though he may be a witness. In making such a decision, he should determine the personal or financial sacrifice of the client that may result from his refusal of employment or withdrawal therefrom, the materiality of his testimony, and the effectiveness of his representation in view of his personal involvement. In weighing these factors, it should be clear that refusal or withdrawal will impose an unreasonable hardship upon the client before the lawyer accepts or continues the employment. Where the question arises, doubts should be resolved in favor of the lawyer testifying and against his becoming or continuing as an advocate."
"DR 5-101. Refusing Employment When the Interests of the Lawyer May Impair His Independent Professional Judgment.
(A) Except with the consent of his client after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property, or personal interests.
(B) A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness, except that he may undertake the employment and he or a lawyer in his firm may testify:
(1) If the testimony will relate solely to an uncontested matter.
(2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.
(3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client.
(4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case."
"DR 5-102. Withdrawal as Counsel When the Lawyer Becomes a Witness.
(A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5-101(B)(1) through (4).
(B) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client."