459 So.2d 658 (1984)
HERO LANDS COMPANY, et al.
v.
Peter P. BORELLO, Jr. and ABC Insurance Company.
No. CA-1982.
Court of Appeal of Louisiana, Fourth Circuit.
November 14, 1984.
Writ Denied January 14, 1985.
*660 Simon, Peragine, Smith & Redfearn, Eric John Witmeyer, New Orleans, for appellants.
William J. Guste, Jr., Atty. Gen., Harry H. Howard, Asst. Atty. Gen., New Orleans, Bubrig & Scandurro, Brian J. Waid, Buras, for appellees.
Before GULOTTA, SCHOTT and WARD, JJ.
GULOTTA, Judge.
In this action against a court reporter for damages resulting from the loss of a transcript of trial testimony, plaintiffs appeal from a judgment dismissing their suit on an exception of one-year prescription in tort, and disqualifying their attorneys as advocates in the case. In a protective answer to the appeal, the defendant court reporter claims immunity from suit and contends the trial court erred in denying his motion for summary judgment and/or exceptions of no right and no cause of action.
Because we interpret the allegations of the petition to state a timely cause of action in tort, we conclude the trial court erred in maintaining the prescription exception. Accordingly, we remand the matter to the trial court for further proceedings. In all other respects, however, we affirm the judgment.
Hero Lands Company and individual members of the Hero family (hereinafter referred to as "Hero") were defendants in a lawsuit entitled Tusson v. Hero Land Co. in the Twenty-Fifth Judicial District Court of Plaquemines Parish. Trial of that lawsuit took place on June 6 and 7, 1977, and on April 5, 1979. Peter P. Borello, Jr., the court reporter, recorded the testimony.
On May 15, 1979, before the trial judge rendered a judgment in the matter, Borello furnished Hero's counsel with an estimated bill of $675.00 for preparation of the trial transcript. In a July 16, 1979 letter, Hero's counsel requested Borello to prepare the transcript, and on January 7, 1980, paid a share of the costs.
In early October, 1980, however, Borello informed Hero's attorney that, despite a diligent search of both his office and his home, he could not locate the transcript of the trial proceedings. Hero's attorney instructed Borello to continue searching for the transcript, and suggested to opposing counsel the possibility of reaching a written stipulation of facts so that the trial judge could render a judgment on the merits without retrying the matter. On November 11, 1980, Borello informed Hero's counsel that he still had not located the transcript and offered to refund Hero's payment.[1]
Without the missing transcript, the trial judge was unable to decide the pending matter. Consequently, on September 16, 1981, a retrial of the missing portion of the litigation was ordered.
On August 23, 1982, Hero filed the instant action against Borello, entitled "Petition for Damages", alleging that the court reporter's "negligence" and "fault" in failing to furnish a transcript of the original trial had caused plaintiffs to undergo a retrial of the Tusson case and incur additional expenses.
Borello responded with an exception of prescription grounded on the claim that plaintiff's action was in tort and untimely because it had been filed more than one year since plaintiffs had learned of the loss of the transcript in November, 1980. Borello also filed exceptions of no cause and no right of action based on the grounds that he enjoyed either an "absolute" or a "good faith" immunity from suit for acts of simple negligence in his capacity as a court reporter. Borello later filed a motion for summary judgment based on similar grounds.
In addition to these exceptions, Borello filed a "rule to show cause" why Hero's attorneys in the instant suit should not be "disqualified". According to Borello, these *661 same attorneyswho had also represented Hero in the earlier Tusson suitwere material, factual witnesses who would testify regarding the loss of the transcript and the alleged damages. Borello argued that ethical considerations therefore prohibited the attorneys from acting dually as advocates and witnesses in the instant case.
In a January 19, 1984 judgment, the trial court "disqualified" Hero's attorneys, partners and associates from acting as counselors or advocates in this matter. The court further maintained defendant's exceptions of prescription and dismissed plaintiffs' suit with prejudice. Borello's other exceptions of no cause and no right of action and his motion for summary judgment were dismissed.

PRESCRIPTION
In written reasons for maintaining the exception of prescription, the trial judge concluded that plaintiffs' tort suit, filed more than one year after the loss of the transcript, was untimely.
Appealing, plaintiffs contend their cause of action for damages against the court reporter arose on September 16, 1981, when the trial court ordered a retrial of the matter, not when the possibility of the loss first surfaced in late 1980. Alternatively, plaintiffs argue their suit is subject to the ten year prescriptive period for contractual actions, and that Borello breached his contractual duty to furnish the transcript of the trial proceedings.
At the outset, we find merit to Hero's contention that the tort allegations of the instant suit are timely pleaded because the petition was filed within one year of the September 16, 1981 decree, which ordered a retrial of the Tusson matter.
Former LSA-C.C. Art. 3537 (now LSA-C.C. Art. 3492) provides that prescription in cases based on tort commences from the day on which damage is sustained. The focus is mainly on the time the damage is sustained rather than the time of the commission of the tortious act; and prescription does not commence to run until plaintiff has actual or constructive knowledge of the tortious act, the damage and the causal relation between the two. Duhon v. Saloom, 323 So.2d 202 (La.App. 3rd Cir.1975), writ refused 325 So.2d 794 (La. 1976).
In the instant case, in November, 1980, plaintiff Hero only knew that the Tusson transcript was probably lost, but did not know at that time if that matter would have to be retried to its detriment or injury. In essence, Hero was not aware of the effect of the transcript loss, until the trial judge rendered his judgment. Indeed, in a letter of October 14, 1980, Hero's attorney had suggested to opposing counsel a possibility of having the matter decided on preemptory exceptions or a written stipulation of facts to avoid a retrial of the matter; and in a letter of October 20 Tusson's attorney agreed to pursue this possibility. The case remained in "limbo" until September 16, 1981, when the trial judge declared that he was unable to decide the matter without the transcript and ordered a retrial. Thus, it is on September 16, 1981, that Hero sustained injury and the one-year prescriptive period commenced. Accordingly, Hero's suit filed within one year of the rendition of that date is therefore timely.
The instant case is akin to Marchand v. Miazza, 151 So.2d 372 (La.App. 4th Cir. 1963) and Demery v. Voelker, 216 So.2d 328 (La.App. 4th Cir.1968). The cited cases were actions for legal and notarial malpractice in which the plaintiffs alleged that the defendants' neglect had caused them to lose certain property rights. In both cases, however, when the malpractice suits were filed, other litigation was still pending to decide whether the plaintiffs had any ownership rights in the property involved. This court concluded in both Marchand and Demery that the one-year prescriptive period for the malpractice suits could not commence until plaintiffs had suffered damage in the form of adverse judgments in the separate pending lawsuits. To hold otherwise, we noted in the cited cases, would place the plaintiffs in the untenable *662 position of having causes of action that were premature one day, yet prescribed the next.
In the instant case, like Marchand and Demery, any suit against the court reporter for loss of the transcript would have been premature until the trial judge in the Tusson matter had ordered a retrial. Prior to the retrial order, Hero was not damaged. Although Hero had knowledge of the probable loss of the transcript, the Tusson matter was still pending and Hero still had hope that the trial judge could reach a decision on the merits without the necessity of a retrial with its additional expenses.
Having concluded that Hero has pleaded a timely cause of action in tort, we do not address the issue whether it has pleaded a cause of action in contract subject to a ten-year prescriptive period.

IMMUNITY
We reject Borello's contention that he is entitled to "absolute" judicial immunity or a qualified, "good faith" immunity for his acts as a court reporter. According to Borello, plaintiff's allegations of "ordinary" negligence, absent allegations of bad faith or gross negligence, fail to state a cause of action. He further contends that his good faith in preparing the transcript and delivering it to the judge supports an exception of no right of action or a summary judgment in his favor. We disagree.
Borello's claim of immunity is not supported by any Louisiana cases. On the contrary, in Easterling v. First Georgia Underwriters, 427 So.2d 4 (La.App. 4th Cir.1983), we recognized that court reporters may be subject to damages for unreasonable and/or unnecessary delays and are not immune from liability for negligence that causes damages to others. Furthermore, LSA-R.S. 13:972(B) requires that the court reporter furnish a bond "for the faithful performance of his duties" and "for the purpose of protecting litigants against any acts of incompetency or neglect of duty by the court reporter" and further provides that any party litigant may sue on the bond for damages sustained "through any wrongful act or neglect of duty by the court reporter in the performance of his duties" (Emphasis ours).[2] This statutory language presupposes an action for damages resulting from the court reporter's breach of official duty and conclusively refutes defendant's claim of either absolute or limited immunity.
We further find no error in the trial judge's dismissal of Borello's motion for summary judgment. Although Borello has filed supporting affidavits averring that he had fulfilled his duties by preparing the trial transcript and delivering it to the judge, the question of how it was lost is an unresolved factual dispute to be determined at a trial on the merits.

DISQUALIFICATION OF COUNSEL
The trial judge disqualified plaintiffs' attorneys as counsel in the instant suit because of their prior participation as Hero's attorneys in the earlier Tusson action. The judge concluded that Ethical Considerations 5-9 and 5-10 of the Code of Professional Responsibility and Disciplinary Rules 5-101 and 5-102 expressly prohibited counsel from acting in a dual capacity as witness and attorney in this litigation.
Appealing, Hero points out that its attorney of record in the instant suit did not personally participate in the earlier Tusson litigation, although he is a member of the firm that did. Plaintiff further argues that the testimony of firm members in the instant judge-tried action will concern routine matters largely pertaining to the value of legal services rendered in the earlier case without any danger of jury confusion. Hero likewise distinguishes Gutierrez v. Travelers Ins. Co., 358 So.2d 349 (La.App. *663 4th Cir.1978), relied on by the trial judge, on the grounds that the attorney in Gutierrez was actively involved in the case both as a primary witness and as attorney for his plaintiff stepmother in her suit for widow's benefits under the worker's compensation law following the death of the attorney's father.
Although we recognize factual distinctions between Gutierrez and the instant case that militate against disqualification of Hero's attorney, we are compelled to apply the provisions of the Code of Professional Responsibility as written.[3] Moreover, we cannot say the testimony of Hero's counsel will relate to uncontested or merely formal matters, since there is a factual dispute concerning the loss of the transcript. We point out also that the trial court is in a better position to make a decision concerning disqualification of counsel. See Exnicios v. Saunders, 448 So.2d 751 (La.App. 4th Cir.1984). Accordingly, we find no error.
Consistent with the foregoing, that portion of the judgment dismissing plaintiffs' suit on an exception of prescription of action is reversed and set aside. In all other respects the judgment is affirmed. The matter is remanded to the trial court for further proceedings consistent herewith. Costs of this appeal are assessed against defendant; assessment of other costs to await the outcome of the case.
REVERSED AND SET ASIDE IN PART; AFFIRMED IN PART; REMANDED.
NOTES
[1] Although reference is made to a missing "transcript" implicit is the fact that the notes from which the transcript was made were also missing.
[2] See Acts 1984, No. 538, which provides for a $10,000.00 bond. The act further provides in pertinent part:

"... The bond shall be in favor of the judge making the appointment and any party litigant for the purpose of protecting litigants against any acts of incompetence or neglect of duty on the part of the reporter...."
[3] 
DISCIPLINARY RULES
DR 5-101. Refusing Employment When the Interests of the Lawyer May Impair His Independent Professional Judgment.
(A) Except with the consent of his client after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property, or personal interests.
(B) A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness, except that he may undertake the employment and he or a lawyer in his firm may testify;
(1) If the testimony will relate solely to an uncontested matter.
(2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.
(3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client.
(4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case.
DR 5-102. Withdrawal as Counsel When the Lawyer Becomes a Witness.
(A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5-101(B)(1) through (4).
(B) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client.